IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BARRY W. FLETCHER, SR., | ) | 4:12CV3179 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT P. HOUSTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Barry W. Fletcher ("Fletcher" or "Plaintiff") filed his Complaint in this matter on August 27, 2012. (Filing No. 1.) This court has given Fletcher leave to proceed in forma pauperis. (Filing No. 7.) The court now conducts an initial review of Fletcher's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). The court also addresses Fletcher's motion seeking the appointment of counsel. (Filing No. 3.)

## I.  SUMMARY OF COMPLAINT

Fletcher is incarcerated at the Tecumseh State Correctional Institution ("TSCI") in Tecumseh, Nebraska. He filed his Complaint against Robert Houston ("Houston"), Frank Hopkins ("Hopkins"), Frances Britten ("Britten"), Michele Hillman ("Hillman"), and Cathie Peters ("Peters"). Houston is the director of the Nebraska Department of Correctional Services ("NDCS"), and Hopkins is the deputy director. Britten is the warden at TSCI, and Hillman is the deputy warden. Peters is a mailroom employee at TSCI. (Filing No. 1 at CM/ECF pp. 3-4.) Fletcher has sued Defendants in their individual and official capacities. (*Id.*)

Condensed and summarized, Fletcher alleges Peters filed misconduct reports against him on August 24 and November 17, 2011, because he removed stamps from envelopes he purchased at the prison canteen. Fletcher alleges that removing stamps

from these envelopes is not a violation of TSCI's written rules or policies.  (*Id.* at CM/ECF pp. 21 and 30.)

The August 24 misconduct report, together with Fletcher's allegations, reflect that Fletcher placed an item of personal mail in the TSCI mail system.  The mail consisted of a personal letter tucked inside of an unsealed 10-by-13-inch manila envelope.  Fletcher attached an inmate check to the manila envelope to pay for the postage.  Peters confiscated the mail, and wrote a misconduct report against Fletcher because there were no stamps attached to the manila envelope.  (*Id.* at CM/ECF pp. 4 and 21.)  As a result, Fletcher was charged with theft, and possessing or receiving unauthorized articles.  (*Id.* at CM/ECF p. 21.)  Fletcher filed grievance forms with Britten, Houston, and Hopkins in response to Peters's actions, which were denied.  (*Id.* at CM/ECF pp. 6-7.)

Peters again confiscated Fletcher's personal mail on November 17, 2011, because stamps were not sticking properly to Fletcher's envelope, "as if they had been peeled off some other envelopes."  (*Id.* at CM/ECF p. 30.)  As a result of this report, Fletcher received five-days' room restriction.  (*Id.* at CM/ECF p. 10.)  Fletcher alleges that Peters confiscated his mail, filed a false report against him, and increased the cost of his postage in retaliation for the grievances he filed against her following the August 24 incident.  (*Id.* at CM/ECF p. 15.)  Fletcher filed another set of grievances with Britten, Houston, and Hopkins in response to Peters' actions.  (*Id.* at CM/ECF pp. 10-11.)  Once again, Fletcher's grievances were denied.

Fletcher alleges he attempted to mail a sealed letter to the postmaster in Johnson County, Nebraska, in an attempt to gather evidence that Peters was lying in her November 17 report.  Peters returned the letter to him because it was sealed.  Thereafter, Fletcher grieved the matter to Hillman, who responded that Fletcher's letter to the post office did not qualify as privileged mail and was subject to inspection.  (*Id.* at CM/ECF pp. 16-17.)  Fletcher alleges that his letter to the postmaster qualifies as privileged mail under NDCS's mail policies.  (*Id.*)

2

Fletcher seeks injunctive relief in the form of a court order that directs Defendants to follow NDCS rules and regulations, and also requires them to abide by the rates set by the United States Postal Service. (*Id.* at CM/ECF p. 19.) Fletcher also seeks monetary relief in the form of compensatory and punitive damages. (*Id.*)

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e)(2). The court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 70 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting

3

under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988);  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III.  DISCUSSION OF CLAIMS

### A.    Official-Capacity Claims

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity.  *See, e.g., Egerdahl v. Hibbing Cmty. Coll.,* 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995).  Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress.  *See*, *e.g.*, *Id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981).  Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 which seek equitable relief from state employee defendants acting in their official capacity.

Fletcher has sued five state employees in their official and individual capacities.  As set forth above, the Eleventh Amendment bars claims for damages by private parties against employees of a state sued in their official capacities.  Accordingly, Fletcher's monetary damages claims against Defendants in their official capacities are barred by the Eleventh Amendment, and will be dismissed.

### B.    Due Process Claims Against Peters, Britten, Houston, and Hopkins

Liberally construed, Fletcher alleges he was charged with violating a prison rule without first receiving notice that the conduct was prohibited.  Due process requires that prisoners receive some advance notice of the prison's rules and regulations.  *See Meis v. Gunter*, 906 F.2d 364, 367 (8th Cir. 1990) ("obvious

4

problems of due process arise" if "[t]here has been no fair notice of what is prohibited"); *Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974) (stating that before a prisoner can be charged with violating prison rules, the prisoner must have notice of those rules); *see also Williams v. Nix*, 1 F.3d 712, 716 (8th Cir. 1993) (noting that it is "axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed").

Here, Fletcher alleges that Peters filed a misconduct report against him because he removed stamps from a manila envelope that he purchased from the prison canteen. He also alleges that removing stamps from canteen-purchased envelopes is not prohibited by TSCI rules. He submitted grievance forms to Britten, Houston, and Hopkins in which he complained that he was punished for a behavior that is not prohibited by prison rules. (*See* copies of grievance forms at Filing No. 1 at CM/ECF pp. 23-28.) Liberally construed, these allegations are enough to "nudge" his due process claims against Peters, Britten, Houston, and Hopkins across the line from conceivable to plausible. However, the court cautions Fletcher that this is only a preliminary determination based on the allegations of the Complaint. This is not a determination of the merits of Fletcher's claims or potential defenses thereto.

## C.    First Amendment Claims Against Peters, Britten, Houston, and Hopkins

Liberally construed, Fletcher alleges that Defendants illegally confiscated his outgoing personal mail in violation of the First Amendment. "While prisoners have a right to send and receive mail, prison officials have a legitimate interest in monitoring that mail for security reasons." *Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004); *see also Thongvanh v. Thalacker*, 17 F.3d 256, 258-59 (8th Cir. 1994) (stating that the prison's responsibility to maintain order may include reading incoming and outgoing mail). Prison officials may justifiably censor outgoing mail concerning escape plans, contraband, threats, or evidence of illegal activity. *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993).

Here, Peters confiscated Fletcher's personal mail because she suspected that he removed stamps from his canteen-purchased envelopes. (Filing No. 1 at CM/ECF pp. 4-19.) Fletcher filed grievances with Britten, Houston, and Hopkins in which he argued that forcing inmates to purchase envelopes with the stamps already attached—and then not allowing them to remove or consolidate the stamps—results in an overpayment of postage, and interferes with his ability to send mail. (*Id.* at CM/ECF pp. 23-35.)

The court suspects that Defendants' mail policies are meant to target the exchange of contraband among inmates. *See Kaestel v. Lockhart*, 746 F.2d 1323, 1325 (8th Cir. 1984) (upholding a prison policy that required inmates to purchase envelopes with the postage stamps embossed on them at the commissary in order to eliminate the exchange of contraband). However, liberally construed, Fletcher has alleged conduct by Defendants that has no legitimate penological interest. In light of the liberal pleading standards afforded to pro se complaints, the court finds that Fletcher's allegations are enough to "nudge" his First Amendment claims against Peters, Britten, Houston, and Hopkins across the line from conceivable to plausible. Accordingly, these claims may proceed to service. Again, the court cautions Fletcher that this is only a preliminary determination based on the allegations of the Complaint.

**D.      Fourth and Fourteenth Amendment Claims Against Peters, Britten, Houston, and Hopkins**

Liberally construed, Fletcher alleges that Defendants illegally confiscated his outgoing personal mail in violation of the Fourth and Fourteenth Amendments. The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. U.S. Const. amend. IV. However, prisoners have very limited Fourth Amendment rights while incarcerated. *See*, *e.g.*, *Hudson v. Palmer*, 468 U.S. 517 (1984) (finding that inmate had no reasonable expectation of privacy in his prison cell entitling him to protection

of Fourth Amendment).  In addition, the decision to censor or  withhold delivery of an inmate's mail must be accompanied by minimum procedural safeguards, which include notice to the inmate that correspondence was rejected, and an opportunity to protest the decision.  *Bonner v. Outlaw*, 552 F.3d 673, 676-77 (8th Cir. 2009).

Here, Fletcher was promptly notified that his mail was detained, he was given the opportunity to protest the decision to withhold his mail, and his mail was returned to him. (Filing No. 1 at CM/ECF pp. 3-5.)  In light of these allegations, Fletcher has failed to allege sufficient facts for the court to reasonably infer that Defendants violated his Fourth and Fourteenth Amendment rights.  Accordingly, Plaintiff's Fourth and Fourteenth Amendment claims against Peters, Britten, Houston, and Hopkins are dismissed.

E.     **Retaliation Claim Against Peters**

Fletcher alleges that Peters filed a misconduct report against him and increased the cost of his postage in retaliation for the grievances he filed against her. Retaliation by a government official for the exercise of a First Amendment right is actionable because if it were not, retaliatory government actions would tend to chill an individual's exercise of his or her constitutional rights.  *Perry v. Sinderman*, 408 U.S. 593, 597 (1972).  In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001).  Furthermore, " retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id.*

To prevail on his retaliation claim, Fletcher must demonstrate: (1) that he engaged in protected activity; (2) that Peters responded with adverse action that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected action. *L.L. Nelson Enterprise Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 807–8

(8th Cir. 2012) (internal quotation marks omitted).  Filing a prison grievance is a protected First Amendment activity.  *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).

Fletcher alleges he filed grievances against Peters after she confiscated his mail.  Peters allegedly responded to these grievances by confiscating Fletcher's mail, filing a misconduct report against him, and increasing the cost of his postage.  (Filing No. 1 at CM/ECF pp. 10-15.)  Liberally construed, Fletcher has alleged sufficient facts to "nudge" his retaliation claim against Peters across the line from conceivable to plausible.  Once again, the court cautions Fletcher that this is only a preliminary determination based only on the allegations of the Complaint.

## F.       Privileged-Mail Claim Against Hillman

Fletcher alleges that after he attempted to mail a sealed letter to the postmaster in Johnson County, Nebraska, Peters returned the letter to him because it was sealed.  Thereafter, Fletcher grieved the matter to Hillman, who denied the grievance.  According to Fletcher's filings, NDCS policy states that "[i]nmates may send sealed letters to all federal and state officials."  Fletcher alleges that Hillman violated NDCS policy when she refused to allow him to mail a sealed letter to the postmaster.

Assuming without deciding that Hillman violated NDCS mail policy when she refused to mail Fletcher's sealed letter, an alleged violation of prison regulations does not provide a basis for an independent cause of action under Section 1983.  *See, e.g.*, *Moore v. Rowley*, 126 F.App'x 759, 760 (8th Cir. 2005) (holding that violation of prison policy does not give rise to 42 U.S.C. § 1983 liability); *Moore v. Schuetzle*, 486 F.Supp.2d 969, 989 (D. N.D. 2007) ("In order to set forth a claim under 42 U.S.C. § 1983, an inmate must show a violation of his constitutional rights, not merely a violation of prison policy.").  Furthermore, Fletcher does not have a constitutional right to have his letter to the postmaster leave the prison without first being inspected.  *See Moore*, 126 F. App'x at 760 (holding that inmate did not have

8

a constitutional right to have his bankruptcy petition leave the institution without first being inspected); *see also Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981) (although legal mail may only be opened in presence of inmate, letter to inmate from ACLU was not entitled to such protection as it was not within "parameters of the attorney-client privilege").  Accordingly, Fletcher has failed to allege sufficient facts for the court to reasonably infer that Hillman violated his constitutional rights. Accordingly, his claims against Hillman will be dismissed.

## IV.  MOTION FOR APPOINTMENT OF COUNSEL

Fletcher also requests the appointment of counsel.  (Filing No. 3.)  The court cannot routinely appoint counsel in civil cases.  In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel. . . .  The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel . . . ." *Id.* (quotation and citation omitted). No such benefit is apparent here.  Fletcher's request for the appointment of counsel is therefore denied without prejudice to reassertion.

IT IS THEREFORE ORDERED that:

1.    Fletcher's claims for monetary damages against Defendants in their official capacities are dismissed.

2.    All claims against Defendant Michele Hillman are dismissed without prejudice to reassertion.

3.    The following claims may proceed to service:
       a.    Fletcher's claims for injunctive relief against Peters, Britten, Houston, and Hopkins in their official capacities;

b.     Fletcher's due process claims against Peters, Britten, Houston, and Hopkins in their individual capacities;

c.     Fletcher's First Amendment claims against Peters, Britten, Houston, and Hopkins in their individual capacities; and

d.     Fletcher's retaliation claims against Peters in her individual capacity.

4.     Fletcher's Motion for Appointment of Counsel (Filing No. 3) is denied without prejudice to reassertion.

5.     To obtain service of process on Defendants, Plaintiff must complete and return the summons forms which the Clerk of the court will provide.  The Clerk of the court shall send four summons forms and four USM-285 forms (for service on Defendants in both their individual capacities and official capacities) to Plaintiff together with a copy of this Memorandum and Order.  Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the Clerk of the court.  In the absence of the forms, service of process cannot occur.

6.     Upon receipt of the completed forms, the Clerk of the court will sign the summons forms, to be forwarded with a copy of Plaintiff's Complaint to the U.S. Marshal for service of process.  The Marshal shall serve the summons and the Complaint without payment of costs or fees.  Service may be by certified mail pursuant to Fed. R. Civ. P. 4 and Nebraska law in the discretion of the Marshal.  The Clerk of the court will copy the Complaint and Plaintiff does not need to do so.

7.     Federal Rule of Civil Procedure 4 requires service of a complaint on a defendant within 120 days of filing the complaint.  However, because in this order Plaintiff is informed for the first time of these requirements, Plaintiff is granted, on the court's own motion, an extension of time until 120 days from the date of this order to complete service of process.

8.      Plaintiff is hereby notified that failure to obtain service of process on a defendant within 120 days of the date of this order may result in dismissal of this matter without further notice as to such defendant.  A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

9.      The Clerk of the Court is directed to set a pro se case management deadline in this case with the following text: "March 20, 2013: Check for completion of service of summons."

10.      The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court.  Plaintiff shall keep the court informed of his current address at all times while this case is pending.  Failure to do so may result in dismissal.

DATED this 20th day of November, 2012.

BY THE COURT:


s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.