IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BARRY W. FLETCHER SR., | |
| Plaintiff, | **4:12CV3179** |
| v. | |
| ROBERT P. HOUSTON, Director, NDCS; FRANK X. HOPKINS, Deputy Director, NDCS; FRANCES BRITTEN, Warden, Tecumseh State Correctional Institution; CATHIE PETERS, mail/material Specialist, Tecumseh State Correctional Institution; and LEAH SWARTHOUT, Sergeant, Tecumseh State Correctional Institution; sued in their individual capacities, | **MEMORANDUM AND ORDER** |
| Defendants. | |

This matter is before the court on defendants' Robert Houston, Frank Hopkins, Frances Britten, and Cathie Peters motion for summary judgment. (Filing No. 79.) As set forth below, the court will grant defendants' Robert Houston, Frank Hopkins, and Frances Britten's motion for summary judgment, and deny defendant Cathy Peters' motion for summary judgment.

## I.    BACKGROUND

Plaintiff filed his original complaint in this matter on August 27, 2012. (Filing No. 1.) On November 20, 2012, the court conducted an initial review of plaintiff's complaint. (Filing No. 8.) In doing so, the court also denied plaintiff's request for the appointment of counsel. (*Id.*) Plaintiff filed an interlocutory appeal of the court's November 20, 2012, Memorandum and Order (Filing No. 10), but later voluntarily dismissed the appeal. (Filing No. 28.)

On June 4, 2013, plaintiff filed an amended complaint that superseded his

1

original complaint. (Filing Nos. 42 and 43.) Condensed, summarized, and liberally construed, plaintiff alleged that defendants violated his constitutional rights when they (1) filed misconduct reports against him for possessing altered envelopes, (2) prohibited him from transferring stamps from envelope to envelope, (3) failed to mail his legal mail for "nearly five" months, and (4) charged him excessive postage. (Filing No. 43.)

On June 21, 2013, defendants filed a motion for summary judgment along with a brief and index of evidence in support. (Filing Nos. 44, 45, and 46.) Plaintiff filed an objection to defendants' motion for summary judgment along with a memorandum in support and an exhibit index. (Filing Nos. 54, 55, and 56.) The court elected to treat plaintiff's objection and memorandum in support as a brief in opposition to defendants' motion for summary judgment. (Filing No. 58.) The court, however, also permitted plaintiff to file an additional brief in opposition to defendants' motion for summary judgment. (*See* Filing No. 64.) Plaintiff filed this additional brief and evidence on October 24, 2013. (Filing Nos. 66, 67, and 68.)

In a Memorandum and Order issued by this court on March 31, 2014, the defendants' motion for summary judgment was granted in part and denied in part with all but one of the plaintiff's claims dismissed. (Filing No. 71.) The remaining claim is related to defendants alleged wrongful withholding of the plaintiff's legal mail from August 2012 to December 2012. The court did not grant the defendants' motion for summary judgment regarding the wrongful withholding of mail claim because, although the claim was not previously asserted in plaintiff's original complaint, "several courts have concluded that fully and properly exhausted claims presented for the first time in an amended or supplemental complaint do not violate Section 1997e(a)'s exhaustion

2

requirement." (*Id.* at p. 7.)   Moreover, this court also recognized that "stating an unreasonable and extended delay or deliberate refusal to post outgoing prisoner mail *may* constitute a deprivation of a prisoner's constitutional rights in the absence of a valid interest in the maintenance of security." (*Id.*) (citing *Dawson v. Kendrick*, 527 F. Supp. 1252, 1309 (S.D. W.Va. 1981) (emphasis added).

## II.     RELEVANT UNDISPUTED FACTS

The plaintiff alleges as to his remaining claim that defendants have interfered with his federally protected right to send and receive mail in violation of the First, Fifth and Fourteenth Amendments of the United States Constitution, and in violation of NEB. CONST. art. I, § 21.  (Filing No. 43.)  In a Memorandum and Order issued on March 31, 2014 (*See* Filing No. 71), this court established the undisputed and material facts relating to the remaining claim.   These undisputed and material facts are hereby incorporated and recited as follows:

1.      Plaintiff was, at all times relevant to this action, an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS"), confined at the Tecumseh State Correctional Institution ("TSCI").  (Filing No. 43 at CM/ECF p. 2.)

2.      At all times relevant to this action, defendant Robert X. Houston ("Houston") was the NDCS Director.  (*Id.*)

3.      At all times relevant to this action, defendant Frank P. Hopkins ("Hopkins") was the NDCS Deputy Director.  (*Id.*)

4.      At all times relevant to this action, defendant Frances Britten ("Britten") was the TSCI Warden.  (*Id.*)

3

5.      At all times relevant to this action, defendant Cathie Peters ("Peters") was a mail and material specialist at TSCI.  (*Id*. at CM/ECF p. 3.)

6.      On June 5, 2009, plaintiff received a copy of the TSCI General Procedures and Orientation for Inmates handbook.  (Filing No. 46-5.)  After he received the handbook, plaintiff was also given an opportunity to discuss the information in it with staff members.  (*Id*.)

7.      The TSCI General Procedures and Orientation for Inmates handbook, dated February 6, 2012, states that: "Authorized items may be considered contraband when found in an altered condition. . . ."  (Filing No. 46-3.)

8.      Operational Memorandum 113.20.02, dated December 7, 2012, states that: "All stamps will be affixed to the envelope by canteen staff at the time of the purchase on all greeting card and manila envelopes purchases. No envelopes can leave the Canteen without postage affixed to them."  (Filing No. 46-4 at CM/ECF p. 4.)

9.      The reason TSCI prohibits inmates from possessing stamps individually is because the stamps can be used as a form of currency.  (Filing No. 46-7 at CM/ECF p. 2.)  Stamps are small and can easily be passed from inmate to inmate.  (*Id*.)  To prevent stamps from being used as currency, the inmates are only allowed to possess them after they are attached to envelopes, therefore making them harder to conceal or trade. (*Id*.)

10.     On August 23, 2011, Peters was working in the TSCI mailroom and received a 10x13 envelope that plaintiff was attempting to mail.  (Filing No. 46-1 at CM/ECF p. 1; Filing No. 46-2 at CM/ECF p. 1.)

11.     After receiving this envelope, Peters weighed it, wrote the amount of postage required on it, and sent it to the canteen to be mailed.  (Filing No. 46-1 at CM/ECF p. 2; Filing No. 46-2 at CM/ECF p. 1.)

12.     On August 24, 2011, canteen staff returned plaintiff's 10x13 envelope to the mailroom with a note saying that the envelope had been altered and could not be mailed.  (Filing No. 46-1 at CM/ECF p. 2; Filing No. 46-2 at CM/ECF p. 1.)

13.     After Peters received the envelope from the canteen, she looked more closely and realized that stamps had been peeled off of the envelope.  (Filing No. 46-2 at CM/ECF p. 1.)

14.     Because plaintiff had been in possession of an altered envelope, he received a misconduct report.  (*Id*.)  The report, however, was eventually dismissed because there was no name on the evidence tag.  (Filing No. 46-2 at CM/ECF p. 3.)

15.     On November 17, 2011, Peters was working in the mailroom and received another envelope from plaintiff.  Six stamps were affixed to the envelope and two of the stamps were not sticking to the envelope (i.e. as though they have been peeled off of another envelope).  (Filing No. 46-1 at CM/ECF p. 2; Filing No. 46-6 at CM/ECF p. 1.)

16.     Plaintiff received another misconduct report, number 2RXA, because he attempted to mail an altered envelope on November 17, 2011.  (Filing No. 46-6 at CM/ECF p. 1.)  Plaintiff later confessed to removing stamps from one envelope and placing them on the envelope that he was attempting to mail.  (*Id*.)

17.     On November 29, 2011, plaintiff was found guilty of violating TSCI's regulations and received "5 days room restriction."  (*Id*. at CM/ECF p. 2.)

18.    On December 15, 2011, plaintiff mailed an envelope. He paid $2.88 for postage. (Filing No. 43 at CM/ECF p. 24.)  Plaintiff alleges that he had previously tried to mail the same envelope and was told that postage would cost $2.40.  (*Id.*)

19.    On December 12, 2012, a Unit Manager called plaintiff into his office and showed him an envelope.   The envelope had white-out on it and the plaintiff's information written over the white-out.  Plaintiff claimed that the writing on the envelope was not his handwriting.  Staff told plaintiff to write an institutional check for $0.45 to mail out the envelope.  Plaintiff claims this envelope was supposed to have been mailed to the United States District Court in August 2012.  (*Id.* at CM/ECF pp. 30-31.)

20.    On December 17, 2012, a Unit Manager again called plaintiff into his office and told him that he needed to write out an institutional check for $0.45 to mail the envelope discussed on December 12, 2012.  (*Id.* at CM/ECF p. 32.)

21.    Plaintiff filed grievances on December 12 and 30, 2012, and January 16, 2013, regarding defendants' failure to mail the envelope to the United States District Court.   In his grievances, plaintiff alleged that defendants were withholding his legal mail.  (*Id.* at CM/ECF pp. 33-34, 64-68.)

## III.    STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).   "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex,* 477 U.S. at 323).   If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson,* 643 F.3d at 1042 (quoting *Celotex,* 477 U.S. at 324).   "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Id.* at 251-52 (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.,* 347 F.3d 1041, 1044 (8th Cir. 2003).   "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.*

"Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

## IV.    ANALYSIS

Defendants Houston, Britten, and Hopkins argue that qualified immunity shields them from plaintiff's suit, and they are, therefore, entitled to judgment as a matter of law. (*See* Filing No. 80)  Defendant Peters argues that she is also entitled to judgment as a matter of law because she did not, and there is no evidence, other than "mere allegations," that Peters intentionally withheld plaintiff's legal mail.  (*Id.* at p. 8)

### 1.    Qualified Immunity

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial.  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted).  Moreover, qualified immunity is "the usual rule" and state actors will enjoy

qualified immunity in all but "exceptional cases." _Foy v. Holston_, 94 F.3d 1528, 1532 (11th Cir. 1996).  Indeed, qualified immunity generally shields "[g]overnment officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." _Harlow_, 457 U.S. at 818.

The court focuses on two questions to determine whether an official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . ." _Henderson v. Munn_, 439 F.3d 497, 501 (8th Cir. 2006) (citations and quotations omitted).  A court "may consider these factors in either order." _Stepnes v. Ritschel_, 663 F.3d 952, 960 (8th Cir. 2011).  With these factors in mind, the court now turns to the claim that the defendants wrongfully withheld plaintiff's legal mail from August 2012 to December 2012.

Regarding the first question in the qualified immunity analysis—whether or not there was a deprivation of a constitutional or statutory right—"a plaintiff must allege and show that the supervisor personally participated in . . . the alleged violations." _McDowell v. Jones_, 990 F.2d 433, 435 (8th Cir. 1992).  A plaintiff may, in the absence of alleging a defendant participated personally, allege that a defendant "actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts." _Id._

In summation, plaintiff's amended complaint essentially alleges that defendants Houston, Britten, and Hopkins deprived plaintiff of his constitutional rights because they

are superiors, they have ultimate oversight over the mailroom and, therefore, should have intervened in the alleged deprivation of plaintiff's constitutional rights. (*See* Filing No. 43.)   The only personal involvement Houston had in the matter was that he allegedly failed to investigate plaintiff's grievances. (*See* Filing No. 43, ¶¶ 33-34, ¶ 66, ¶ 67, ¶ 99, ¶ 100, ¶ 124, ¶ 125.)  The only alleged personal involvement that Britten and Hopkins had in the matter was their responses to the plaintiff's grievances. (*See* Filing No. 43, ¶ 25, ¶ 27, ¶ 31, ¶¶ 57-58, ¶ 64, ¶¶ 66-67, ¶ 97, ¶ 100, ¶ 123, ¶ 125.)

Thus, the question is whether responding, or failing to respond, to the plaintiff's grievances constitutes personal involvement in the alleged deprivation of plaintiff's constitutional right to send legal mail.  This court believes that responding, or failing to respond, to the plaintiff's grievances does not constitute personal involvement in the alleged deprivation of plaintiff's constitutional right to send legal mail as set forth in this case.   The grievances filed by the plaintiff regarding the alleged deprivation of his constitutional right to send legal mail occurred *after* the alleged deprivation had taken place—thus, defendants' Houston, Britten, and Hopkins actions, or inactions, are attenuated, and secondary to the alleged wrong in which the plaintiff incurred. Moreover, the plaintiff did not allege that defendants Houston, Britten, and Hopkins knew of, and were deliberately indifferent to or tacitly authorized the alleged withholding of his mail.

At best, the argument set forth by the plaintiff is a *respondeat superior* claim—a claim alleging that Houston, Britten, and Hopkins should be held liable because they had supervisory authority over the employees in the mail room who deprived plaintiff of his rights.  To this end, however, defendants are correct in citing *Wilson v. City of North*

*Little Rock*, 801 F.2d 316, 322-23 (8th Cir. 1986), which explicitly holds that a person cannot be liable simply because he supervises one who allegedly deprived a plaintiff of a constitutional right.   "A supervisor may, [however], be liable for the acts of a subordinate if injury is inflicted upon the plaintiff as a result of a breach of the supervisor's duty to train, supervise, or control the actions of subordinates."   *Hahn v. McLey*, 737 F.2d 771, 773 (8th Cir. 1984).   The plaintiff's amended complaint does not assert that defendants Houston, Britten, or Hopkins breached their duty to train, supervise, or control the action of subordinates.   The plaintiff's amended complaint simply posits that defendants Houston, Britten, and Hopkins ". . . are responsible for depriving [the plaintiff] of his property. . ."   (*See* Filing No. 43 ¶ 127.)   When read in context with plaintiff's entire amended complaint, this conclusory allegation infers that defendants Houston, Britten, and Hopkins are allegedly liable because they are merely supervisors—not because of any breach of a duty to train, supervise, or control the action of subordinates.

Moreover, plaintiff's "brief in support of objection to motion for summary judgment" (Filing No. 83) does not refute the statements set forth in defendants' brief in support of summary judgment.   The plaintiff merely opines that summary judgment is not appropriate for the same reason this court refused to grant defendants' initial summary judgment on this issue: "[d]efendants ignore the fact that plaintiff raised his new claims in an amended complaint filed on June 4, 2013." (*Id.*)   The plaintiff fails, however, to recognize that the premise of defendants' current motion for summary judgment is separate and distinct from defendants' initial motion for summary judgment.   Therefore, although it is true that this court refused to grant defendants' previous motion

11

for summary judgment (*see* Filing No. 71) because the plaintiff raised his claim regarding the withholding of his mail in an amended complaint, the defendants' current motion for summary judgment sets forth entirely different arguments in support of the motion.   Accordingly, the plaintiff's notion that the defendants' summary judgment should be denied for the same reason carries no weight and is in no way applicable to the current motion for summary judgment.

The plaintiff has failed to allege or submit evidence that defendants Houston, Britten, and Hopkins personally participated in the deprivation of his constitutional rights. The plaintiff has also failed to allege or submit evidence that defendants Houston, Britten, and Hopkins knew of, and were deliberately indifferent to or tacitly authorized, the allegedly unconstitutional act.   In addition, persons cannot be liable simply because he or she supervises one who allegedly deprived a plaintiff of a constitutional right.   *See Wilson*, 801 F.2d at 322-23.   Accordingly, the plaintiff has failed to carry his burden in establishing why "the usual rule" of qualified immunity should not apply in this case. *See Foy*, 94 F.3d at 1532 (stating that qualified immunity is the 'usual rule').

After viewing the facts in the light most favorable to the plaintiff, the plaintiff has failed to show that defendants Houston, Britten, and Hopkins deprived, knew of or was indifferent to, the plaintiff's constitutional rights.   Defendants Houston, Britten, and Hopkins are, therefore, shielded by qualified immunity and are entitled to judgment as a matter of law.

### 2.   Lack of Evidence Indicating Violation of Constitutional Rights

Defendant Peters does not argue that qualified immunity shields her from the plaintiff's suit.   Defendant Peters instead argues that she is entitled to judgment as a

matter of law because the plaintiff has "failed to produce any evidence indicating that Peters violated the plaintiff's constitutional rights."  (Filing No. 80.)

As recited above,[1] on a motion for summary judgment, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'"  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323).  If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'"  *Torgerson*, 643 F.3d at 1042 (quoting *Celotex*, 477 U.S. at 324).

Defendant Peters has not carried her burden in establishing that there is no genuine issue of material fact.  At this point, even when considering the defendant's affidavits and plaintiff's lack of evidence, it is unclear to the court exactly what happened with the plaintiff's mail.  Specifically, there seems to be a genuine issue of material fact as to (1) whether the plaintiff was sending legal mail and (2) why/how the defendant withheld plaintiff's mail for three months.  There seems to be a three-month gap that neither party can account for, which is very disconcerting to the court.

Because Peters failed to carry her initial burden as the movant, the burden never shifted to plaintiff.  Accordingly, it is of no consequence that plaintiff failed to respond by submitting evidentiary materials setting out specific facts showing that there is a genuine issue for trial.  Because there remains a genuine issue of material fact, this court denies defendant Peters' motion for summary judgment as to plaintiff's remaining

---

[1] This court set forth the standard for summary judgment in Section III above.

claim.  Also, as is indicated below, the court will appoint plaintiff counsel to assist with this remaining claim.

THEREFORE, IT IS ORDERED that:

(1) The court grants defendants' motion for summary judgment, Filing No. 79, as to Robert Houston, Frank Hopkins, and Frances Britten because qualified immunity shields them from plaintiff's remaining claim;

 (2) The court denies defendants' motion for summary judgment, Filing No. 79, as to Cathie Peters because there remains a genuine issue of material fact as to whether defendant Peters wrongfully withheld plaintiff's legal mail;

(3) The court hereby appoints Michael D. Gooch as counsel to represent the plaintiff  in this case. Mr. Gooch shall immediately enter an appearance in this case; and

(4) The magistrate judge shall progress this case as set forth herein.

DATED:  November 19, 2014

BY THE COURT:


 s/ Joseph F. Bataillon
Senior United States District Judge